17 So.2d 240

**YOST et al. v. PATRICK.**

**4 Div. 322.**

Supreme Court of Alabama.

Feb. 24, 1944.

Henry C. Meader and Fred S. Ball, Jr., both of Montgomery, for appellants,

Powell, Albritton & Albritton, of Andalusia, and Calvin Poole, of Greenville, for appellee.

**BOULDIN, Justice.**

The appeal is from a decree in equity denying an application for a temporary writ of injunction after hearing under the statute. Code, Title 7, § 1057.

The objective of the bill is to enforce by injunctive process a contract binding the seller of a business with its good will, not to engage in a competing business, etc.

The hearing was had upon a sworn bill and exhibits and supporting affidavit of Walter J. Yost, one of complainants, and on the demurrer and sworn answer of the respondent, Albert I. Patrick. The facts so disclosed so far as deemed essential to the proper disposal of this appeal are in substance as follows:

Prior to and on December 3, 1940, Ewell Lumber Corporation was engaged in the lumber business at Ewell in Dale County, Alabama. It owned and operated a planing mill and finishing plant for resale of its products. Its lumber supply was acquired through the purchase of rough green lumber produced by local sawmills operating in timber areas within trucking distance. This green lumber was stacked upon lumber yards and dried, then milled, processed and finished for resale.

To facilitate the procurement of rough lumber, the Ewell Company at times made advances to local sawmill men, enabling them to buy timber and otherwise forward their operations, with agreement to deliver their output at agreed prices.

On December 3, 1940, this Ewell Lumber Corporation entered into a contract with McGowin Saw Mill Company, Inc., a corporation, looking to the sale of its plant and business, reciting: "Vendor agrees to sell, convey, transfer and deliver to purchaser, at the price and upon the terms and conditions hereinafter stated, vendor's planing plant and properties, including all vendor's plant, structures, machinery, tools and appliances, at Ewell, Dale County, Alabama, said plant consisting of:" Here follows the list of the main items of machinery connected with the plant. The contract covered all real estate leases. The contract further recited as follows: "This sale and transfer of the planing mill and equipment is to be as of March 1st, 1941, or earlier in the event vendor has manufactured, sold and shipped out all its lumber now owned by it and on its yards prior to that date." The seller was not to buy more lumber.

Meanwhile, the buyer was authorized to begin acquiring and assembling a stock of lumber on the yards preparatory to the operation of the plant, and began to do so on the date of the contract.

The complainants, Walter J. Yost, et al., were at the time and still are engaged in a like business under the name of Pine Plume Lumber Company, their plant being located at Ozark, Dale County, some five miles from Ewell. On December 12, 1940, being within ten days after the contract above noted, McGowin Saw Mill Com-

pany, Inc., entered into a contract, also made exhibit to the bill, wherein the Mc-Gowin Saw Mill .Company, Inc., assigned to Pine Plume Lumber Company its contract with the Ewell Company with the further stipulations that the assignee should do and perform all the obligations of the assignor. The contract was signed by Mc-Gowin Saw Mill Company, Inc., by W. M. McGowin, its president. As addenda to this contract was incorporated the following covenant: "1. It is a part of the consideration for this agreement that neither Mc-Gowin Saw Mill Company, Inc., nor W. M. McGowin will purchase any rough lumber or timber for the purpose of manufacture, remanufacture or finishing within a radius of fifty (50) miles from Ewell, Alabama, for a period of five years from this date."

The contract between Ewell Corporation and McGowin Corporation contained the following covenant: "It is further agreed and understood that vendor is not to purchase any rough lumber or timber for the purposes of manufacture, remanufacture or finishing within a radius of fifty (50) miles from Ewell, Alabama, for a period of five (5) years from this date."

So far as appears, the Ewell Company and McGowin Saw Mill Company, Inc., lived up to their obligations and the plant passed over to Pine Plume Lumber Company in due time, whereupon this company dismantled the plant, sold out or removed the machinery, and there were no further operations at Ewell in the name of any of the three companies. The complainants never operated in either the name of Ewell Company or the McGowin Company at Ozark, but merely sought to consolidate the two businesses at Ozark. From the supporting affidavit it appears the primary purpose of the Pine Plume Lumber Company was to have an open field in the purchase of rough lumber for its plant, disclaims any lowering of the price of green lumber or restricting the market therefor, but alleges it was difficult for both plants to obtain sufficient lumber supply to meet their needs.

Section 8 of the bill reads: "That some time prior to November 8, 1941, the respondent, who was a son-in-law of W. M. McGowin, the chief owner of the stock of McGowin Saw Mill Company, Inc., either by purchase, gift, or otherwise, became the owner of all or substantially all of the assets of McGowin Saw Mill Company, Inc., and having full knowledge of the fact that McGowin Saw Mill Company, Inc., could not as a corporation purchase rough lumber or lumber for manufacture or re-manufacture or finishing within a radius of fifty miles from Ewell, Alabama, for a period of five years from December 12, 1940, and in order to evade the restrictions existing against said McGowin Saw Mill Company, Inc., the respondent caused the Mc-Gowin Saw Mill Company, Inc., to be dissolved on November 8, 1941, and thereupon began to do business individually under the name of McGowin Saw Mill Company and did and still does continue to, purchase rough lumber or lumber for re-manufacture or finishing within a radius of fifty miles of Ewell, Alabama, and particularly at Ewell, Alabama, contrary to the restriction set out in said assignment of December 12, 1940."

The bill prayed "that a temporary restraining order be issued after such notice and hearing as may be prescribed by the court restraining and enjoining the respondent from purchasing any rough lumber or lumber for the purpose of manufacture or re-manufacture or finishing within a radius of fifty miles from Ewell, Alabama."

The sworn answer of respondent Patrick disclosed he was a minority stockholder in the McGowin Saw Mill Company, Inc.; that he bought out all of its assets and paid for them; that thereupon the corporation was dissolved by action of the stockholders; that he had no connection with the operation of any plant at Ewell; that in fact the corporation never operated the plant in its own name or in the name of the Ewell Company, having sold out to the complainant company before the McGowin Corporation took over. He denies that he was bound by the contract with the complainants which was signed by the corporation and W. M. McGowin, who was the chief stockholder; that he is not now purchasing and has never purchased rough lumber or lumber for the purpose of manufacture, remanufacture or finishing within a radius of fifty miles of Ewell, Alabama, or at Ewell, Alabama, but that he has purchased and is still purchasing rough lumber or lumber within a radius of fifty miles of Ewell, Alabama, or at Ewell, Alabama. He admits having knowledge of the covenants, supra.

The bill is aimed at the protection of the good will of the business said to have passed from Ewell Corporation to McGowin

Corporation, thence to Pine Plume Lumber Company.

Appellant's argument in brief begins: "1. Is the agreement unlawful?

"The Alabama statute (Title 9, Section 23) makes agreements of this nature valid when made in connection with the sale of the good will of a business."

In considering the transactions here presented, and the measure of relief sought by the bill, we deem it important to consider our entire statute dealing with contracts not to engage in any lawful business. This statute first appeared in three sections, 6826, 6827 and 6828, of the Code of 1923, reading as follows:

"6826. Contract in restraint of trade, void.—Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent, void.

"6827. Exception in favor of sale of goodwill.—One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein.

"6828. Exceptions in favor of partnership arrangements.—Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same county, city or town where the partnership business has been transacted, or within a specified part thereof."

Section 6827 was amended by Act of 1931, General Acts 1931, page 647, to read: "One who sells the good will of a business may agree with the buyer, and one who hires as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."

This act added after the words "from carrying on" in the original section the words "or engaging in"; and further wrote in provisions permitting a contract between employer and employee restraining the employer from engaging in a competing business within the limits of space and time fixed by the statute.

As thus amended, the statute appears without change as §§ 22, 23 and 24, Title 9, Code of 1940.

In this state, as well as elsewhere, we have many decisions dealing with contracts in restraint of trade; when valid, and when invalid, on grounds of public policy because tending to monopoly or unduly restricting the right of the citizen to engage in a lawful business.

■ Broadly speaking, it was settled that upon the sale of a business, and the good will thereof, a stipulation that the seller would not engage in a competing business as against the buyer, or one succeeding to the good will, was valid and enforcible by injunctive process, provided the inhibition was reasonably limited as to time and space. 5 Ala.Dig., Contracts, ⊸116(2), 117(6, 7, 8), pp. 51, 53; Maddox v. Fuller, 233 Ala. 662, 173 So. 12; Shelton v. Shelton, 238 Ala. 489, 192 So. 55.

In dealing with the difficult questions arising out of contracts more or less in restraint of trade, Alabama is not the first state to enact a statute like ours.

Our original statute, in three sections, is a verbatim copy of the statute of California, dating back to 1872. Deering's Code & Statutes of California, Civ.Code, §§ 1673, 1674, 1675. See, also, Field's Draft of N.Y. Civ.Code, § 833.

The state of Oklahoma has a like statute dating back to 1890, now appearing in the identical language of our original statute. See §§ 217, 218 and 219 of Title 15 Oklahoma Statutes 1941.

The decisions of Oklahoma, sometimes citing and following the decisions of California, have several times construed the statute.

■ Our statute being a verbatim copy of these older statutes, was manifestly taken from some one of them, and decisions antedating our statute are to be taken as persuasive here.

■ The lawmakers, for practical reasons perhaps, inserted a saving clause in the first section, now § 22, Title 9, worded "to that extent, void." Decisions in the parent states construe this to mean, as applied to the following section dealing with the sale of the good will of a business, that a contract restraining the seller from engaging in a competitive business is not wholly

void because not limited in the matter of time and space as per statute.

Since § 22 declares such stipulations void to the extent they are not so limited, the result is to write into such stipulation the provisions of § 23 touching time and space. We approve that construction. This court judicially knows that the area included within a radius of fifty miles of Ewell is several times larger than Dale County. A stipulation forbidding the seller to engage in a like business at any point without the county of Dale, and as incident thereto, buy lumber without regard to where it was produced, was to that extent void.

But such stipulation was valid and binding on the covenantors not to engage in a like business at Ewell or other point in Dale County so long as the buyer or successor to the good will of the business at Ewell continued such business in Dale County. The stipulation of five years was binding for that period, or such lesser period as the buyer shall continue in such business. Hartman v. Everett, 158 Okl. 29, 12 P.2d 543; Wall v. Chapman, 84 Okl. 114, 202 P. 303; Akers v. Rappe, 30 Cal.App. 290, 158 P. 129; Ragsdale v. Nagle, 106 Cal. 332, 39 P. 628; Davis, Inc., v. Christopher, 219 Ala. 346, 122 So. 406; 17 C.J.S., Contracts, § 257, p. 642.

It is not essential that the contract for the sale of a business expressly include the good will thereof. Covenants designed, in the nature of them, to protect the good will of the business being sold, imply a sale of the good will. Maddox v. Fuller, supra; Davis, Inc., v. Christopher, supra.

The bill here presented takes no note of the limits of space prescribed by the statute, nor limits the writ of injunction sought accordingly. The entire structure, averments and prayer of the bill seek to enforce the contract as written. To grant the injunction sought would have restrained respondent from locating a similar plant in an adjoining county, if within fifty miles of Ewell, and there engage in buying lumber from saw mill men producing lumber within fifty miles of Ewell.

If otherwise entitled to a temporary injunction, it should be limited in time and place as prescribed by statute.

Turning to questions chiefly discussed in argument.

Appellee insists he was not personally a party to the contract, and is in no way bound by the covenant sought to be enforced.

"A person who has not executed or signed the contract or covenant is not bound by the stipulation against engaging in business, and he may not be enjoined from competing with the covenantee. He may, however, be restrained from engaging in the business in partnership with, or as an employee of, the covenanter or seller. The seller may not make use of a corporation entity as a means of evading the obligation of his covenant. Again, the covenant may be invoked to prevent competition by a member of the covenanter's family.

"* * * Officers and stockholders of a corporation who, as its agents, sell its business and good will are not, merely because they participate in the sale and, as stockholders, receive its benefits, bound by the stipulations of the contract against re-engaging in business; * * *." 36 Am. Jur. 548; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; Hall's Safe Co. v. Herring-Hall-Marvin Safe Co., 6 Cir., 146 F. 37, 14 L.R.A.,N.S., 1182; Sloan v. Charlevoix State Savings Bank, 260 Mich. 291, 244 N. W. 477; Sineath v. Katzis, 218 N.C. 740, 12 S.E.2d 671; Stoia v. Miskinis, 298 Mich. 105, 298 N.W. 469; Simmons v. Johnson, Ala.App., 11 So.2d 710; Hall Mfg. Co. v. Western Steel & Iron Works, 7 Cir., 227 F. 588, L.R.A.1916C, 620.

The covenant here does not purport to be the contract of any person, save the corporation and W. M. McGowin, its president and chief stockholder. The fact that W. M. McGowin is named and personally bound is suggestive that no other person was to be personally bound. The corporation, or its president, would not have authority to bind a stockholder as an individual by a contract in restraint of his right to engaged in a lawful business, without a legal showing that the stockholder gave such authority.

But appellants insist the respondent not only opened up a competing business at Ewell, which, conceding he had the lawful right to do in his own name, he could not lawfully conduct business under a name substantially the same as that of the seller, and thus capture and utilize for himself the good will attaching to the name, and then known by him to be the property right of another.

It is said: "The chief elements of value in good will are continuity of place and continuity of name." 24 Am.Jur. 805.

Again: "All definitions of good will incorporate as one of the chief elements thereof the advantage accruing to a vendee from the old business stand, * * *."

"As exemplified in the definitions, another of the elements of good will is the name with which patrons of a business associate their past satisfaction and upon which they found their anticipation of future satisfaction. The name may be of the place of business, the name under which the business is conducted, or the brand or trade name of the article produced. * * *." 24 Am.Jur. 806; Collas v. Brown, 211 Ala. 443, 100 So. 769.

We are not prepared to hold that any third person with knowledge that the good will of a business at Ewell, including the good will grown out of the business name, had become the property right of another, could convert such property right to his own advantage by opening a competing business at Ewell in such name. Be that as it may, an all-sufficient answer is that it does not appear McGowin Saw Mill Company, Inc., ever did business at Ewell of such duration and character as to constitute the name any substantial element of the good will passing to Pine Plume Lumber Company. Moreover, it was never contemplated that this company employ the name of McGowin Corporation in its business at Ozark, nor was it ever so used.

"Good will exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident." 38 C.J.S., Good Will, § 3, p. 951.

"As far as dependent on locality or name, good will may become extinct or rendered less valuable by the termination of the right to continue to occupy the premises, or the loss of the right to do business under the name theretofore used, * * *." 38 C.J.S., Good Will, § 4, p. 953.

We find no error in the decree under review.

The foregoing expresses the views of the writer.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur in the result as expressed in the latter part of the opinion.

They express no views as to the proper construction of the statutes set out in the opinion.

Affirmed.