The plaintiff, Gilmore Ford, Inc., appeals from a summary judgment for the defendants, Larry Puckett Chevrolet, Inc., and Paul Raymond Turner and his brother, Jimmy R. Turner, in this action seeking damages and injunctive relief to enforce a covenant not to compete. We affirm.
The undisputed material facts in this case show the following: Gilmore Ford, an automobile dealership in Prattville, Alabama, purchased the Turner brothers' automobile business, Turner Brothers Motor Company, for $150,000. The Turners' business was also located in Prattville, across the street from Gilmore Ford. This purchase consisted of the land, building, inventory, and certain office equipment owned by the Turners. As a part of this transaction, the Turners, who had developed reputations as talented automobile salesmen in the Prattville area, executed a deed and a bill of sale; they also went to work as salesmen for Gilmore Ford and signed a covenant not to compete with Gilmore Ford within a 25-mile radius of Prattville for a period of 5 years. Although Gilmore Ford and the Turners never executed a sales contract, the covenant not to compete recited that Gilmore Ford had "purchased [the Turners'] business and all rights thereto." Gilmore Ford did not purchase the Turners' accounts receivable or a customer list and did not carry on the Turners' business. None of the documents executed in connection with the sale stated that Gilmore Ford was purchasing the goodwill in the Turners' business, and Gilmore Ford's accountant did not allocate a value to goodwill. The Turners eventually left their employment with Gilmore Ford and went to work selling automobiles for Larry Puckett Chevrolet, Inc., a competitor of Gilmore Ford. Gilmore Ford then filed this action, alleging that the Turners had breached the *Page 31 
non-competition covenant and that Larry Puckett Chevrolet had tortiously interfered with Gilmore Ford's agreement with the Turners.[1]
The dispositive issue here is whether a jury should determine if Gilmore Ford purchased the goodwill of the Turners' business. If, as Gilmore Ford contends, there is evidence that goodwill was one of the assets it purchased from the Turners, then the covenant not to compete may be enforceable and the summary judgment would have been improper. If, as the defendants contend and as the trial court ruled, the undisputed evidence shows that Gilmore Ford did not purchase the goodwill of the Turners' business, then the covenant not to compete is unenforceable as a matter of law. See Ala. Code 1975, § 8-1-1.
"Goodwill" has been defined as the advantage or benefit acquired by a business beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement it receives from constant and habitual customers, on account of its local position, common celebrity, reputation for skill, affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. See Collas v. Brown, 211 Ala. 443, 100 So. 769 (1924); see, also, 38 Am.Jur.2d Goodwill § 1 (1968). Goodwill is property of an intangible nature and constitutes a valuable asset of the business of which it is a part, unless in a particular instance it is too uncertain and contingent in nature to be appraised. 38 Am.Jur.2d, supra, § 3. It is well settled that goodwill, being property, is transferable and may be bought and sold in connection with the sale of a business; it is not essential, however, that the contract for the sale of a business expressly mention the goodwill of the business. Covenants not to compete that are designed to protect the goodwill of a business being sold imply a sale of the goodwill. 38 Am.Jur.2d, supra, §§ 9, 10; Yost v. Patrick, 245 Ala. 275, 17 So.2d 240 (1944).
After carefully reviewing the record in the present case, we conclude that there was no genuine issue of material fact and that the defendants were entitled to a judgment as a matter of law. Therefore, the summary judgment was proper under Rule 56, A.R.Civ.P. The undisputed evidence shows that Gilmore Ford purchased only the Turners' tangible assets — land, inventory, etc. Buford Gilmore, the president of Gilmore Ford, testified as follows:
 "Q. Did you buy from [the Turners] the right to use the name Turner Brothers [Motor Company]?
 "A. Never was mentioned. I didn't particularly need it.
 "Q. Did [the Turners] furnish you with a list of their customers . . .?
"A. No.
"Q. Did you buy any of the accounts receivable?
"A. No.
"Q. Did you take up any of the accounts payable?
"A. No.
 "Q. In other words, you didn't buy the [Turners'] business . . .; you just bought the assets?
 "A. I guess I just bought the assets and thought I was buying their good faith.
"Q. What do you mean by 'good faith'?
 "A. Well, that they would work for me like they agreed to do. ". . . .
 "Q. If they hadn't come to work for you, you wouldn't have bought it?
"A. No.
". . . .
 "Q. . . . [A]t the time you were buying the assets of [the Turners'] business, would you have bought the assets of the business if [the Turners] had not agreed to sign [the covenant not to compete]?
"A. I certainly would not have. *Page 32 
". . . .
 "Q. Did your accountant assign anything to goodwill in your purchase of [the Turners'] business?
"A. I don't think so.
"Q. In the purchase of the assets?
"A. I don't think so.
 "Q. In other words, you purchased used cars or maybe new vans. But whatever [the Turners] sold, you purchased for wholesale price; is that correct?
"A. Right.
 "Q. And you purchased the land and building and the personal property, the file cabinets and stuff described in Defendants Exhibit 2 [other office equipment] for $150,000?
"A. Um-hum.
 "Q. And there was no purchase, according to your accountant, of anything other than that?
"A. No."
The record shows that Gilmore Ford did not continue to operate the Turners' business and apparently never intended to do so. The record indicates that Gilmore Ford's sole motivation in purchasing the Turners' business was to obtain the tangible assets of the Turners' business, as well as the services of the Turners themselves in selling its automobiles. The evidence conclusively shows that the covenant not to compete was not required by Gilmore Ford for the purpose of protecting the purchase of the goodwill of the Turners' business. Thus, the only reasonable inference that can be drawn from the evidence in this case is that Gilmore Ford had no interest in, and did not purchase, the goodwill that had developed in the Turners' business. Consequently, we hold that the covenant not to compete is void under § 8-1-1 and, therefore, that the summary judgment was proper as to the Turners.
Furthermore, Gilmore Ford's claim against Larry Puckett Chevrolet was based on allegations that Larry Puckett Chevrolet, in competition with Gilmore Ford, and with full knowledge of the covenant not to compete, had employed the Turners as automobile salesmen. Therefore, because the non-competition covenant is void, we hold that the summary judgment was also proper as to Larry Puckett Chevrolet. Rule 56, supra.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] The Turners filed a counterclaim against Gilmore Ford, seeking payment of commissions or salary allegedly owed, as well as damages based on an alleged fraud. The trial court certified the summary judgment on Gilmore Ford's claims as final, pursuant to Rule 54(b), A.R.Civ.P.; the Turners' counterclaim remains pending below.