888 So.2d 464 (2004)
AMERICAN NATIONAL RED CROSS
v.
ASD SPECIALTY HEALTHCARE, INC., an incorporated division of Amerisource Bergen Corp. d/b/a Oncology Supply; Midwest Drug Supply, LLC; and Raymar Worldwide Sales, Inc.
1020446.
Supreme Court of Alabama.
October 3, 2003.
Opinion Overruling Rehearing March 19, 2004.
Dennis D. Murrell and Amy E. Shoemaker of Middleton Reutlinger, Louisville, Kentucky; and Benjamin M. Bowden, P.C., Andalusia, for plaintiff.
Sandy G. Robinson and Ian D. Rosenthal of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, for respondent ASD Specialty Healthcare, Inc.
PER CURIAM.
The United States District Court for the Southern District of Alabama has certified the following question to this Court pursuant to Rule 18, Ala.R.App.P.: "Whether the [Alabama Uniform Fraudulent] Transfer Act, Ala.Code [1975,] §§ 8-9A-1 et seq., includes blood products, as provided for in Ala.Code [1975,] § 7-2-314(4). The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by this case."
To assist this Court in its determination, the district court provided the following *465 summary of the pertinent facts of the controversy, as well as a concise explanation of the arguments presented by the parties:
"Plaintiff Red Cross alleges that, during 1999, it entered into an arrangement with an individual named Peter Woolley and a company with which he was affiliated, LA Pharmaceutical, to sell blood products to LA Pharmaceutical, LLC (`LA Pharmaceutical'). Plaintiff further alleges that LA Pharmaceutical, through one of its principals, Peter Woolley, then transferred the blood products to certain of the defendants in violation of the AUFTA [Alabama Uniform Fraudulent Transfer Act]. (A default judgment has previously been entered against LA Pharmaceutical and Peter Woolley, neither of which are defendants in this current action.)
"The defendants [ASD Specialty Healthcare, Inc.; Midwest Drug Supply, LLC; and Raymar Worldwide Sales, Inc.] deny any liability under the AUFTA. The defendants have also asserted that the AUFTA has no application in this case because the blood products in question are considered, for all purposes, to be a `service' under Ala.Code [1975,] § 7-2-314(4) and, therefore, not `property' under the AUFTA. All parties agree that the blood products in question are governed by § 7-2-314(4). Plaintiff asserts that the AUFTA is applicable because the definition of `property' under the AUFTA includes the blood products in question; however, defendants assert that the AUFTA is not applicable because the definition of `property' under the AUFTA does not include services."
After conducting the appropriate hearings, the magistrate judge, drawing an analogy between goodwill and services, concluded that the Alabama Uniform Fraudulent Transfer Act, Ala.Code 1975, § 8-9A-1 et seq. ("the AUFTA") did apply to the instant transaction. The district court judge, in its order adopting the magistrate judge's recommendation, similarly concluded that the distribution of blood products in the transaction at issue constituted "an intangible asset" and met "the broad definition of property under the AUFTA." Although we employ a slightly different rationale, we nevertheless reach the same conclusion with respect to the question presented; consequently, we answer the certified question in the affirmative.
The purpose of the AUFTA is to prohibit the fraudulent transfer of property by a debtor "who intends to defraud creditors by placing assets beyond their reach." Thompson Props. v. Birmingham Hide & Tallow Co., 839 So.2d 629, 632 (Ala.2002). Thus, the AUFTA defines "transfer" broadly, noting that it includes "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money...." Ala.Code 1975, § 8-9A-1(13). The AUFTA defines an "asset" as "[p]roperty of a debtor...." Ala.Code 1975, § 8-9A-1(2).
"Property" is broadly defined in the AUFTA to encompass "real and personal property, whether tangible or intangible, and any interest in property whether legal or equitable and includes anything that may be the subject of ownership." Ala.Code 1975, § 8-9A-1(11). If not apparent from the language of the statute itself, the Alabama Comment to § 8-9A-1 of the AUFTA notes the expansive definition of "property," which it says was specifically designed "to give the term `property' a broad meaning...."
Thus, it would appear that blood products qualify as "property" under the AUFTA. However, ASD Specialty Healthcare, Inc., an incorporated division *466 of Amerisource Bergen Corp. d/b/a Oncology Supply; Midwest Drug Supply, LLC; and Raymar Worldwide Sales, Inc. (hereinafter referred to collectively as "the defendants"), argue that the AUFTA has no application in this case because, they say, the blood products in question are considered "for all purposes" to be a "service" under Ala.Code 1975, § 7-2-314(4), a part of Alabama's Uniform Commercial Code; therefore, they argue, those blood products are not "property" under the AUFTA. We disagree.
When a court construes a statute, "[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). With this standard in mind, we review the text of § 7-2-314(4), which provides:
"(4) Procuring, furnishing, donating, processing, distributing, or using human whole blood, plasma, blood products, blood derivatives, and other human tissues such as corneas, bones or organs for the purpose of injecting, transfusing, or transplanting any of them in the human body is declared for all purposes to be the rendition of a service by every person participating therein and whether any remuneration is paid therefor is declared not to be a sale of such whole blood, plasma, blood products, blood derivatives, or other human tissues."
Here, the plain reading of § 7-2-314(4) indicates that it is the "[p]rocuring, furnishing, donating, processing, distributing, or using ... blood products" that is "declared for all purposes to be the rendition of a service." In other words, the act of procuring and furnishing the blood products  not the blood products themselves  is the service. See State v. Community Blood & Plasma Serv., Inc., 48 Ala.App. 658, 661, 267 So.2d 176, 179 (1972)(in holding that processing blood products was not a sale subject to taxation, court stated that "the activity of `procuring, furnishing, donating, processing, distributing, or using human whole blood, plasma, blood products, etc.', is to be a service by every person participating therein").
Thus, those "furnishing," "distributing," or "procuring" blood products provide a service, and that service does not constitute a sale.[1] However, § 7-2-314(4), which declares the "procuring, furnishing, donating, processing, distributing, or using" of blood products to be a service, does not, in any sense, address the chattel nature of the underlying blood products. Although the distinction between "furnishing," "distributing," or "procuring" blood products and the underlying blood products themselves is perhaps subtle, that distinction is all important. Because § 7-2-314(4) does not exclude, as the defendants suggest, blood products from the application of the AUFTA and because blood products "may be the subject of ownership," they are "property" for purposes of the AUFTA.
CERTIFIED QUESTION ANSWERED.
SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON and LYONS, JJ., dissent.
*467 HOUSTON, Justice (dissenting).
I concur with Justice Lyons's dissent. The answer to the certified question is that the definition of "property" under the AUFTA does not include blood products, as provided in Ala.Code 1975, § 7-2-314(4).
LYONS, Justice (dissenting).
The AUFTA condemns the act of "disposing of or parting with an asset" for fraudulent purposes. Ala.Code 1975, § 8-9A-1(13) (emphasis added). I cannot focus exclusively on the nature of the blood product, apart from the acts of "procuring, furnishing, donating, processing, [or] distributing" as used in § 7-2-314(4) in light of the AUFTA's applicability to the acts of "disposing of or parting with" those products. Section 7-2-314(4) provides that distributing blood is a service for all purposes. I therefore cannot answer the question presented in the affirmative.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON and LYONS, JJ., dissent.
HOUSTON, Justice (dissenting).
I would grant the application for rehearing for the following reasons. In the majority opinion on original submission, this Court held that the blood products in question were "property." The Court noted a distinction, with regard to the application of the Alabama Uniform Fraudulent Transfer Act, § 8-9A-1 et seq., Ala.Code 1975 ("the AUFTA"), between the "distribution of blood products," which is defined in § 7-2-314(4), Ala.Code 1975, as a service "for all purposes," and the blood products themselves. It is my opinion that the clear language of § 7-2-314(4) does not allow the transaction at issue here to be considered "property" under the AUFTA and that this Court should have answered the certified question in the negative. Therefore, I dissent.
In its rehearing application, ASD Specialty Healthcare, Inc., argues that there is a "logical absurdity" in this Court's opinion. ASD relies upon this Court's opinion in Wilson v. American Red Cross, 600 So.2d 216 (Ala.1992), the only other case in which this Court has addressed the "for all purposes" language of § 7-2-314(4). ASD contends that the "for all purposes" language takes blood out of the class of "property" as that term is defined by the AUFTA, which applies to the transfer of property.
In Wilson, Wilson contracted hepatitis B after receiving blood during surgery at the University of Alabama Hospital in Birmingham. Wilson sued the Red Cross, including a claim alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"). This Court in Wilson held that the words "for all purposes" in § 7-2-314(4) rendered the blood at issue in that case not "property" for such purposes as "negligence actions, breach of contract actions, and actions brought under the AEMLD." 600 So.2d at 218.[1] The Court determined in Wilson that § 7-2-314(4) required that the distribution of blood products was considered a *468 "service," thereby preventing Wilson from filing an AEMLD action against the American Red Cross, because such an action applies only to "an unreasonably dangerous product," 600 So.2d at 217-18, and not to a "service."
In State v. Community Blood & Plasma Service, Inc., 48 Ala.App. 658, 661, 267 So.2d 176, 179 (1972), another opinion interpreting § 7-2-314(4), the Alabama Court of Civil Appeals held that the processing of blood products was not a sale subject to taxation. That court stated that "the activity of `procuring, furnishing, donating, processing, distributing, or using human whole blood, plasma, blood products, etc.', is to be a service by every person participating therein." The Community Blood opinion in effect added sales tax to those "purposes" to which the appellate courts of Alabama consider § 7-2-314(4) applicable.
Red Cross argues that "[a]t no point in its analysis did the [Community Blood] Court contend that blood products are not property capable of transfer. Rather, the only question addressed was whether to treat the transfer of the blood products as a sale or a service." (Red Cross's reply brief on application for rehearing, p. 6.) That, of course, is the problem. If blood products are of a "chattel nature," then why did the Community Blood court not rule that the transaction involved in that case was a sale of blood products  chattel  subject to taxation? The Community Blood case involved the State's attempt to impose a sales tax upon the blood bank, which sold blood products to hospitals. The statute upon which the tax was based, Tit. 51, § 786(3), Code of Alabama 1940 (now Ala.Code 1975, § 40-23-2(3)), applied to businesses "selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character." Relying upon the blood-shield statute, § 7-2-314(4), the Alabama Court of Civil Appeals stated: "We particularly note the language of the statute which states `is declared for all purposes to be the rendition of a service....'" 48 Ala.App. at 661, 267 So.2d at 179. Reading this language in conjunction with the rationale of Wilson, supra, the words "for all purposes" seem to be all-encompassing.
However, if "services" can be included within the broad definition of property under the AUFTA, as the Red Cross argues, then perhaps the AUFTA would still apply to the transaction in question. The purpose of the AUFTA is to prohibit the fraudulent transfer of property by a debtor "who intends to defraud creditors by placing assets beyond their reach." Thompson Props. v. Birmingham Hide & Tallow Co., 839 So.2d 629, 632 (Ala.2002). To accomplish this purpose, the AUFTA defines "transfer" broadly, noting that it includes "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money...." Ala.Code 1975, § 8-9A-1(13). The AUFTA defines an "asset" as "[p]roperty of a debtor...." Ala.Code 1975, § 8-9A-1(2).
"Property" is broadly defined in the AUFTA to encompass "real and personal property, whether tangible or intangible, and any interest in property whether legal or equitable and includes anything that may be the subject of ownership." Ala.Code 1975, § 8-9A-1(11) (emphasis added). If not apparent from the language of the statute itself, the Alabama Comment to § 8-9A-1 of the AUFTA notes that the chapter's definition of "property" differs from the definition in the Uniform Act and notes that the Alabama definition was specifically designed "to give the term `property' a broad meaning and to use language *469 similar to the Alabama Probate Code." The AUFTA defines "property" to include "anything that may be the subject of ownership." The question thus remains then whether "services" may be "the subject of ownership."
The federal magistrate judge in this case explained in her "Report and Recommendation" that the goodwill of a business may contain a "service-related component," and that, as such, "services" are capable of being sold and purchased. Specifically, she quoted from an Alabama Supreme Court case, Gilmore Ford, Inc. v. Turner, 599 So.2d 29, 31 (Ala.1992):
"`"Goodwill" has been defined as the advantage or benefit acquired by a business beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement it receives from constant and habitual customers, on account of its local position, common celebrity, reputation for skill, affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. See Collas v. Brown, 211 Ala. 443, 100 So. 769 (1924); see also, 38 Am.Jur.2d Goodwill § 1 (1968). Goodwill is property of an intangible nature and constitutes a valuable asset of the business of which it is a part, unless in a particular instance it is too uncertain and contingent in nature to be appraised. 38 Am.Jur.2d, supra, § 3. It is well settled that goodwill, being property, is transferable and may be bought and sold in connection with the sale of a business; it is not essential, however, that the contract for the sale of a business expressly mention the goodwill of the business. Covenants not to compete that are designed to protect the goodwill of a business being sold imply a sale of the goodwill. 38 Am.Jur.2d, supra, §§ 9, 10; Yost v. Patrick, 245 Ala. 275, 17 So.2d 240 (1944).'"
(Emphasis added by magistrate judge.) The magistrate judge reasoned that "services" are present in the goodwill of a business, and because goodwill can be the subject of ownership, then the "rendering of services" can also be the subject of ownership.
The distinction lost upon both the Red Cross and the district court  and indeed this Court  is the difference between a service contract and the actual rendition of a service. The former is property that can be the subject of ownership, while the latter is not. Therefore, while agreeing that the goodwill of a business, including a contract obligating a party to perform a service, is an asset that can be transferred, the defendants contend that the rendition of a service, in and of itself, is not something capable of being transferred or of being the subject of ownership.
The defendants cite Most Worshipful Grand Lodge v. Allen, 208 Ala. 292, 94 So. 343 (1922), in support of their argument that services cannot be considered property the transfer of which can be a violation of the AUFTA. In that case, the Lodge obtained a judgment against Clarence Allen for an existing debt. Allen, for the purpose of avoiding payment on the judgment, donated his services to a corporation in which his wife owned a majority of the stock. Instead of a salary, the wife accrued dividends that the corporation paid her. She then supported her husband with those increased dividends. This Court stated:
"The law does not give to a creditor the right to appropriate the labor or personal services of a debtor for the satisfaction of his debt....
"....
"Manifestly, such a donation of labor or services presents no analogy to a *470 donation of property which is subject to the claims of creditors, and the rules of law that govern fraudulent conveyances can have no application."
208 Ala. at 293, 94 So. at 344.
The blood-shield statute defines the "[p]rocuring, furnishing, donating, processing, distributing, or using [of] human whole blood, plasma, blood products," etc., as "the rendition of a service," not as a contract for service. § 7-2-314(4), Ala.Code 1975. The rendition of a service is not subject to transfer, so as to invoke the AUFTA. Also, in this particular case, the defendants have paid for the service  the distribution of the blood products  so there does not exist even an account receivable, which would, like a contract for services to be performed, be property that is subject to ownership as defined by the AUFTA. The service provided to the defendants is not part of a contract that may be transferred; in fact, the service has already been performed. Therefore, it is not the subject of ownership.
The past existence of the services in this case calls into doubt another aspect of the argument advanced by the Red Cross  that in defining the word "property" in the AUFTA, the Legislature "use[d] language similar to the Alabama Probate Code." Ala.Code 1975, Alabama Comment to § 8-9A-1. Primarily, the Alabama Probate Code is concerned with the transfer of the property of decedents, who, having died, can no longer render or transfer a service. Likewise, in this case, once Peter Woolley had distributed the blood products to the defendants, the service was complete and could not be transferred or the subject of ownership.
I cannot agree with the recommendation of the federal magistrate judge in this case because if the "service" rendered, as defined by § 7-2-314(4), can be categorized as property under the AUFTA, then the only real check on an improper expansion of what is to be considered property for purposes of the AUFTA is the "broad" definition of property in the AUFTA, i.e., "anything that may be the subject of ownership."
If, in fact, the clear language of the blood-shield statute has in this case allowed a putative wrongdoer to find a way to accomplish a fraudulent transfer without being liable under the AUFTA, it is not this Court's duty to amend that language.[2] Alabama is one of a small number of states that include the "for all purposes" language in its blood-shield statute. As of 1994, 48 states had enacted blood-shield statutes. Rachel B. Adler, Device Dilemma: Should Hospitals Be Strictly Liable for Retailing Defective Surgical Devices?, 5 Alb. L.J. Sci. & Tech. 95, 123 (1994). Only 14 states, besides Alabama, use the phrase "for all purposes" in their statutes: California, Kansas, Kentucky, Maine, Michigan, Mississippi, Missouri, Nebraska, North Carolina, Ohio, Rhode Island, Vermont, Washington, and West Virginia.[3] *471 The other states that have enacted blood-shield statutes limit their characterization of blood products as services to specific titles, or to specific types of claims. See, e.g., Tenn.Code Ann. § 47-2-316(5) (2002) and Tex. Bus. & Com.Code Ann. § 2.316(e) (2002), both of which exempt such "services" from implied-warranty provisions but do not define the distribution of blood products as services "for all purposes." The Texas statute specifically states "for purposes of this Title."
Any attempt, however well-meaning, on this Court's part to create an exception to the blood-shield statute is an attempt to avoid the plain meaning of the words of the statute and creates dangerous precedent. With respect to Ala.Code 1975, § 7-2-314(4), the words "for all purposes" mean just that. Accepting the plain meaning of the words "all purposes," we would have to conclude that the statute includes the fraudulent transfer of property. The statute is clear and unambiguous, and it is the duty of this Court to ensure that the statute is followed as the Legislature intended. "`When [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement.'" See Macon v. Huntsville Utils., 613 So.2d 318, 320 (Ala.1992) (quoting Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990)). See also Ex parte Cove Props., 796 So.2d 331, 333-34 (Ala.2000). Any attempt by this Court to "clarify" the statute actually adds confusion and uncertainty to the meaning of the statute. If the Legislature considers the statute in need of adjustment, it is free to make that adjustment. However, it is not the duty of this Court to "correct" statutes enacted by the Legislature. See Employees' Retirement Sys. of Alabama v. Head, 369 So.2d 1227 (Ala.1979), and May v. Head, 210 Ala. 112, 96 So. 869 (1923).
According to Ala.Code 1975, § 7-2-314(4), those who "furnish []," "distribut[e]," or "procur[e]" blood products provide a service, and that service, unless it is in the form of a contract to provide services, does not constitute a sale.[4] Therefore, it appears that the distribution to the defendants by Woolley of the blood products in this case constituted "[p]rocuring, furnishing, donating, processing, distributing, or using human whole blood, plasma, blood products, blood derivatives, and other human tissues," and is "the rendition of a service" as defined by Ala.Code 1975, § 7-2-314(4), and may not be the subject of a transfer that would violate the AUFTA. The rationale in this Court's October 3, 2003, opinion creates the logical possibility that the blood-shield statute can be bypassed by a court's applying a property definition instead of a service definition for blood products.
Therefore, I respectfully dissent.
LYONS, J., concurs.
NOTES
[1] Conversely, the Alabama Legislature has defined certain services to constitute a sale: "[T]he serving for value of food or drink to be consumed either on the premises or elsewhere is a sale." Ala.Code 1975, § 7-2-314(1).
[1] The full quote from Wilson stated:

"When drafting § 7-2-314, our legislature specifically used the language `for all purposes.' Applying our rules of statutory construction, this Court holds that the legislature intended § 7-2-314(4) to be applicable for all purposes, including negligence actions, breach of contract actions, and actions brought under the AEMLD."
600 So.2d at 218.
[2] As Chief Justice John Marshall succinctly stated in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803): "It is emphatically the province and duty of the judicial department to say what the law is." We overstep that boundary if we attempt to legislate by amending unambiguous statutes lawfully passed by the Legislature. "`When [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement.'" Macon v. Huntsville Utils., 613 So.2d 318, 320 (Ala.1992) (quoting Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990)).
[3] California, Cal. Health & Safety Code § 1606 (West 1990); Kansas, Kan. Stat. Ann. § 65-3701 (2002); Kentucky, Ky.Rev.Stat. Ann. § 139.125 (Michie 2001); Maine, Me.Rev.Stat. Ann. tit. 11, § 2-108 (West 2002); Michigan, Mich. Comp. Laws § 14.15 (West 2001); Mississippi, Miss.Code Ann. § 41-41-1 (2001); Missouri, Mo.Rev.Stat. § 431.069 (1999); Nebraska, Neb.Rev.Stat. § 71-4001 (1996); North Carolina, N.C. Gen.Stat. Ann. § 130A-410 (2003); Ohio, Ohio Rev.Code Ann. § 2108.11 (Anderson 2002); Rhode Island, R.I. Gen. Laws § 23-17-30 (2001); Vermont, Vt. Stat. Ann. tit. 9A, § 2-108 (1994); Washington, Wash. Rev.Code § 70.54.120 (2002); and West Virginia, W. Va.Code § 16-23-1 (2001).
[4] Conversely, the Legislature has stated that certain services constitute a sale: "[T]he serving for value of food or drink to be consumed either on the premises or elsewhere is a sale." Ala.Code 1975, § 7-2-314(1).