BOLIN, Justice.
Susan Martin, doctor of veterinary medicine, appeals from a summary judgment in favor of Mary S. Battistella, doctor of veterinary medicine. We dismiss the appeal.

Facts and Procedural History

On May 27, 2005, Battistella sold her veterinary-medicine practice in Alexander City to Martin. The sales agreement quoted a purchase price of $345,000; that price included (1) $40,000 for equipment, furniture, and fixtures; (2) $282,000 for intangibles (including “goodwill”); (3) $18,000 for inventory; and (4) $5,000 for a covenant not to compete. The covenant not to compete provided as follows:
“Provided that [Martin] is not in default under this Agreement neither [Battistella], whether as a principal, principal owner, part owner, owner, interest holder, unit holder, stockholder, partner, employee, independent contractors, contractor, agent, or in any other capacity, nor any entity in which [Battis-tella] has an interest, will for a period of five (5) years after the Effective Date, and within a fifteen (15) mile radius of the Facility engage in the operation of a veterinary medical practice or veterinary hospital or otherwise perform veterinary services.”
On June 12, 2007, Battistella filed a declaratory-judgment action, naming Martin as a defendant and seeking a determination of the enforceability of the noncom-petition clause because she wanted to open a veterinary health resort. On July 18, 2007, Martin filed an answer along with a counterclaim alleging that Battis-tella would be in breach of the sales agreement if she opened a new veterinary practice because Martin would no longer receive the “goodwill” of the business. Martin later amended her counterclaim, asking the court to restore her to the condition she would have occupied had Battis-tella not breached the sales agreement. Following a hearing, the trial court, on September 12, 2007, entered an order declaring the noncompetition clause unenforceable.
Battistella filed a motion for a summary judgment on Martin’s counterclaim. On October 3, 2007, the trial court held a hearing on Battistella’s summary-judgment motion. On October 10, 2007, the trial court entered a summary judgment in favor of Battistella on Martin’s counterclaim. The trial court’s order provided, in pertinent part:
“[Martin] now alleges that [Battistel-la’s] opening of a competing business is a breach of the contract in another manner. Specifically, [Martin] states that she purchased the goodwill and intangibles from [Battistella] and that [Battis-tella] has breached the agreement by the potential opening of her new business which will reduce the value of the goodwill and intangibles that [Martin] purchased. She is requesting monetary damages for the alleged breach.
“[Martin’s] claim is without merit. The law does not allow a restraint of a professional’s ability to practice his/her profession. The Court cannot allow economic damages against [Battistella] for *1237 her lawful practice of veterinary medicine. As stated in Cherry, Bekaert & Holland v. Brown, 582 So.2d 502 (Ala.1991), the law does not allow a restraint on the practice of a profession on a monetary basis. A breach of contract claim dealing with the sale of goodwill and intangibles in this manner would simply be a covenant not to compete called by another name.”
On October 25, 2007, Martin filed a motion to alter, amend, or vacate the judgment, arguing that the trial court erred in applying Cherry, Bekaert & Holland v. Brown, 582 So.2d 502 (Ala.1991), to the facts in this case. Martin also contended that the trial court failed to address the $5,000 she had paid Battistella in exchange for Battistella’s agreement not to compete. She also included testimony from Battistel-la that Battistella had removed from the clinic after the sale certain items valued at $2,500 that should have been included in the sale. On November 2, 2007, the trial court granted Martin’s motion in part, ordering that Battistella repay Martin the $5,000 Martin had paid for the unenforceable covenant not to compete and that she pay Martin $2,500 for breaching the contract by removing items from the practice that were part of the sales agreement. Martin appeals from that portion of the summary judgment entered in favor of Battistella.

Standard of Revieiv

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).” ’ ”
Gooden v. City of Talladega, 966 So.2d 232, 235 (Ala.2007) (quoting Prince v. Poole, 935 So.2d 431, 442 (Ala.2006)).

Discussion

Martin did not appeal from the trial court’s judgment declaring the noncom-petition clause unenforceable. Instead, Martin argues that simply because the noncompetition clause was unenforceable the remainder of the sales agreement was not rendered void. She argues that because Battistella will be operating a competing business, Martin will no longer receive the “goodwill” she paid for under the sales agreement because, she says, Battis-tella’s former patients will go to Battistel-la’s new business.
We note § 8-l-l(a), Ala.Code 1975, provides that “[e]very contract by which anyone restricted from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section *1238 is to that extent void.” In Friddle v. Raymond, 575 So.2d 1038 (Ala.1991), the parties were veterinarians who were practicing veterinary medicine pursuant to a partnership agreement. One of the partners agreed to sell the other partner his half of the partnership. Under the terms of the sales agreement, the selling partner agreed not to compete with the buying partner in the veterinary-hospital business within six miles of the hospital at which they had operated their practice for a period of three years. The selling partner began to practice within the three-mile area shortly after signing the sales agreement. The buying partner sued and argued on appeal that veterinarians are not “professionals” and are therefore not prohibited by § 8-1-1 from entering into restrictive covenants not to compete. This Court held that veterinarians are “professionals” and stated
“Although the remaining subsections of § 8-1-1 provide for exceptions to the general rule [stated in subsection (a) ], including an exception for the sale of the good will of a business, this Court has stated on numerous occasions that a ‘professional’ cannot fall within these statutory exceptions.... This point is further supported by the Court’s observation that § 8-1-1 expresses the public policy of Alabama that contracts that place a restraint on trade are disfavored “ ‘because they tend not only to deprive the public of efficient service but also tend to impoverish the individual.” ’ ”
575 So.2d at 1040.
In Gilmore Ford,, Inc. v. Turner, 599 So.2d 29, 81 (Ala.1992), this Court defined “goodwill” as follows:
“ ‘Goodwill’ has been defined as the advantage or benefit acquired by a business beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement it receives from constant and habitual customers, on account of its local position, common celebrity, reputation for skill, affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. See Collas v. Brown, 211 Ala. 443, 100 So. 769 (1924); see, also, 38 Am.Jur.2d Goodwill § 1 (1968). Goodwill is property of an intangible nature and constitutes a valuable asset of the business of which it is a part, unless in a particular instance it is too uncertain and contingent in nature to be appraised. 38 Am.Jur.2d, supra, § 3. It is well settled that goodwill, being property, is transferable and may be bought and sold in connection with the sale of a business; it is not essential, however, that the contract for the sale of a business expressly mention the goodwill of the business. Covenants not to compete that are designed to protect the goodwill of a business being sold imply a sale of the goodwill. 38 Am.Jur.2d, supra, §§ 9, 10; Yost v. Patrick, 245 Ala. 275, 17 So.2d 240 (1944).’ ”
Martin cites Salisbury v. Semple, 565 So.2d 234, 236 (Ala.1990), in support of her position. In Salisbury, one doctor agreed to sell his practice to another doctor. The buying doctor agreed to pay $900,000 in monthly installments over a period of 11 years. The agreement provided that 30% of the purchase price was considered to be payment for the purchase of the goodwill of the practice. The selling doctor agreed not to compete with the existing practice. The buying doctor stopped making payments and filed a declaratory-judgment action seeking a declaration that the purchase agreement was void and unenforceable because it contained a covenant not to compete. The buying doctor did not allege that the covenant not to compete had *1239 been violated. Instead, he alleged that the practice of medicine is a profession, that the covenant not to compete was therefore unenforceable, and that, because, he contended, 70% of the purchase price for the purchase agreement was for the covenant not to compete, he was obligated to pay only 30% of the sales price. This Court stated:
“[The buying doctor] admits that the [selling doctor] has not violated the covenant not to compete. Furthermore, [the buying doctor] received [the selling doctor’s] medical practice, the fixtures, the optical business, and the goodwill, as contemplated by the contract. In short, [the buying doctor] has received all the he bargained for. We hold that [the buying doctor] ... is now estopped from refusing to perform his obligation to pay the agreed purchase price under the contract simply because it contains a covenant not to compete. We note that any other result would be particularly inequitable in view of the fact that the covenant not to compete was included in the contract a [the buying doctor’s] request.”
565 So.2d at 236.
Martin argues that as was the case in Salisbury, the remainder of the sales agreement (excluding the noncompetition clause) is enforceable. She argues that because Battistella will breach the contract with regard to the sale of the goodwill of the business when she opens her new clinic, Martin should be allowed to recover from Battistella based on a breach of the sales agreement. Martin contends that Battistella received all that she bargained for, less the $5,000 for the covenant not to compete, and that Battistella’s new clinic will take away business from Martin, who, under the sales agreement, was to receive the “goodwill” of the business for five years.
Battistella argues that Martin’s damages are speculative because, Battistella says, Martin presented no evidence indicating that she would be damaged by Battistella’s new clinic. Battistella contends that Martin has only speculated that she may be entitled to damages once Battistella opens her new clinic and Battistella’s former patients may choose to go to Battistella’s new clinic rather than the clinic Martin purchased from Battistella. Martin argues that Battistella impaired the goodwill of the clinic by building a new clinic and that that portion of the purchase price allocated to goodwill should be the amount of her damages. “Total destruction of the goodwill is not to be presumed from the mere breach of the contract not to compete; hence, it has been held erroneous to base a recovery on an amount representing the portion of the purchase price regarded as having been paid for the goodwill, in the absence of evidence that such amount corresponds with the actual loss sustained.” Annot. 127 A.L.R. 1152 (1940).
In Howard v. Taylor, 90 Ala. 241, 8 So. 36 (1890), the defendant sold the plaintiff his bar and its fixtures, together with the goodwill of the business, an unexpired lease on a house out of which the business was operated, and an agreement by the defendant not to carry on the same business at any other place in town. The defendant then started a competing business, and the plaintiff sued. The trial court declared that among the elements of damages might be loss of profits, if there were evidence from which such amount might be ascertained with reasonable certainty, and the diminution of the value of the property sold. However, this Court held that it was error for the trial court to instruct the jury that the plaintiff was entitled to recover the difference between the value of the fixtures, together with the right to lease the house, and the agreed- *1240 upon sales price, because such an instruction was based upon the theory that total destruction of goodwill necessarily resulted from the breach of contract and the incorrect assumption that the mere fact that because the defendant was engaged in the same business in the same town the plaintiff suffered damage to the extent indicated without proof of actual injury and its extent. The Court stated: “[A] violation of the promise not to engage in the same business does not necessarily work the total destruction of the good-will nor deprive plaintiff wholly of its enjoyment and benefit.” 90 Ala. at 245, 8 So. at 38.
In the present case, Martin’s damages are speculative in nature. There is nothing in the record to show that any loss or harm to Martin has occurred, because Bat-tistella has not yet opened her clinic. In her original counterclaim, Martin stated that Battistella’s alleged breach of the sales agreement caused her “significant monetary damages.” However, the only particularized description of those damages appears in Martin’s amended counterclaim, in which she states:
“If this Court declares paragraph # 27 Covenant Not to Compete null and void as requested in Plaintiffs Complaint for Declaratory Judgment, the Good Will purchased by [Martin] from the Plaintiff in the amount of $282,000.00 is a loss.... The market value of the practice is based upon what it will earn in the future, which is based on historic data and page 13 ‘Intangible Assets’ primarily refers to Goodwill, blue sky, etc.... [I]neluded in this is a Veterinary Medical Practice, the market location, continuity of service of place and name, competition or lack of it, low rate of client turnover, reputation for quality medical care, or any other thing that established or particular veterinary practice as ‘the place where it is preferable to do business,’ can be considered contributing to the intangible asset value. Dr. Battistella would be competing against [Martin] at her new address, 8610 Kowaliga Road, Eclectic, Alabama, which is 13.9 miles from Wayside Animal Hospital and within the fifteen mile radius of the Covenant Not to Compete. [Martin] will suffer damage[ ] each time Dr. Battistella provides Veterinarian services to clients of Wayside Animal Hospital that Dr. Battistella sold [Martin] in the Agreement of Sale. This will continue until in the expiration of the Covenant Not to Compete expires on June 30, 2010.”
Martin makes a similar statement in her brief to this Court on appeal:
“Obviously, Dr. Battistella’s new clinic is going to take away business from Dr. Martin. The goodwill Dr. Martin was to receive for five (5) years from Dr. Bat-tistella, while she was not competing with her is now gone. Dr. Battistella’s old clients will go to her new office and reduce the retention of clients.”
Martin’s brief at 21. Thus, Martin argues that she expects to lose business once Bat-tistella opens her facility. However, she has not presented this Court with any evidence to indicate that Battistella’s facility had even opened or that Martin has lost any clients or suffered any monetary damages in anticipation of that opening. In fact, when asked during her deposition whether she had, at that time, “lost any patients or income as a result of Mary’s potential opening,” she responded that she did not know. When asked whether she had suffered significant damage as alleged in her counterclaim, she repeatedly responded that she did not know. From this testimony and the arguments in the briefs, it appears that Martin’s breach-of-contract claim is based on the expectation of a future event. “Ripeness is defined as *1241 ‘[t]he circumstance existing when a case has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made.’ ” Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 353 n. 5 (Ala.2008) (quoting Black’s Laiv Dictionary 1353 (8th ed.2004)). This case has not reached that point as Martin has only speculated as to what her damages may be.
“Damages can be awarded only where they are reasonably certain and not based upon speculation.” Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812, 820 (Ala.1988). Accordingly, because Martin’s breach-of-contract claim is not ripe, the trial court was without jurisdiction to review her counterclaim at this time, and the appeal is dismissed.
APPEAL DISMISSED.
COBB, C.J., and SEE, LYONS, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
WOODALL, J., dissents.