PER CURIAM.
Bob Riley, Governor of the State of Alabama, and Robert L. Childree, comptroller of the State of Alabama (hereinafter referred to collectively as “the Riley defendants”), have petitioned this Court for a writ of mandamus directing the trial court to dismiss the complaint in the underlying case against them for lack of subject-matter jurisdiction. Pursuant to this Court’s order of September 23, 2008, the plaintiffs in the underlying case, Hank Sanders and Roger Bedford, members of the Alabama Senate; John Knight, a member of the *803 Alabama House of Representatives; and the Joint Fiscal Committee of the Alabama Legislature (of which Sanders, Bedford, and Knight are members) (hereinafter referred to collectively as “the legislators”), were directed to file an answer and briefs addressing the issue whether the underlying case was ripe for judicial review, and all proceedings in the trial court were ordered to be stayed during the pendency of this Court’s consideration of that issue. On November 18, 2008, the parties presented oral arguments to this Court on that issue.
The underlying action arises from Governor Riley’s veto of § 4 of House Bill 328 (“H.B. 328”), the general-fund appropriations bill for fiscal year 2009, enacted during the 2008 Regular Session of the Alabama Legislature. That section provides, in pertinent part:
“Of the amounts appropriated in this act from the State General Fund for the fiscal year ending September 30, 2009, 17.75% of each appropriation is conditioned upon the availability of funds in the State General Fund, the recommendation of the Director of Finance, and the approval of the Governor with the exception of the following appropriations from the State General Fund to the following agencies:
“Alabama Medicaid Agency $ 622,478,155
“Alabama Department of Public Health $ 84,641,324
“Alabama Department of Senior Services $ 17,554,599
“Alabama Department of Human Resources $112,881,321
“Alabama Department of Mental Health and Mental Retardation $ 143,258,026
“Department of Child Abuse and Neglect Prevention $ 1,011,610
“The above-listed appropriations shall be funded in their entirety from the State General Fund in [fiscal year] 2009. In the event funds are not available to fully fund the conditional appropriations from the State General Fund made in this section to other agencies, the Governor shall apportion available funds in the General Fund proportionately across-the-board to those agencies for the fiscal year that -ends September 30, 2009. In the event revenue is not available to fund all of these conditional appropriations, earmarked items and line-item appropriations shall be released proportionately. On October 30, 2008, the Governor shall certify to the Director of Finance and notify the Chair of the Senate Finance and Taxation-General Fund Committee, the Chair of the House Government Appropriations Committee, and the Legislative Fiscal Officer the amount of projected available revenue in the State General Fund and the source of the additional revenue available to fund all or any portion of the conditional appropriations made in this section. The conditional appropriations made in this section from the State General Fund are first priority conditional appropriations and shall be released in their entirety before any other conditional appropriations from the State General Fund may be released. The amount of revenue certified by the Governor on October 15, 2008 [sic],[1] to be available for the conditional State General Fund appropriations made in this section shall be the amount of funds allocated proportionately to each agency for its operation plan for [fiscal year] 2009.”
On May 19, 2008, pursuant to Ala. Const.1901, Art. V, § 126,[2] Governor Riley *804 sent a message to the legislature that he was disapproving § 4 of H.B. 328:
“Beginning on page 128, line 10, by-striking through line 10 and each subsequent line, through line 20, on page 128, and resuming on page 129, line 1, and striking through that line 1 and each subsequent line on page 129, through line 23, and resuming on page 130, line 1, strike through said line and each succeeding line through line 7, thus striking and deleting the entire section 4 of said bill. This item, or these items, are both illegal under the laws of the State of Alabama and unconstitutional under the Constitution of the State of Alabama. In the Alabama Constitution of 1901, as amended, in Article XI, Section 213, there is a specific constitutional requirement that the state comptroller shall issue warrants for that proportion of each claim which the money available for payment of all claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the state treasurer. This provision clearly imposes a constitutional obligation on the state comptroller to prorate, both across the board, proportionately to all departments and agencies. Similarly, under state law, Code of Alabama, § 41-4-90, requires the governor, in the event the estimated budget resources during the budget year are not sufficient to pay all appropriations in full, to restrict allotments to prevent an overdraft or deficit in any fiscal year for which appropriations are made, by prorating, without discrimination against any department, board, bureau, commission, agency, office, or institution of the state, the available revenues among the various departments, boards, bureaus, commissions, agencies, offices, and institutions of the state. The law goes further to more specifically state, ‘in other words, said appropriations shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimate by the Department of Finance as available in each of said fiscal years.’
“The Legislature, in its appropriation bill, House Bill 328, cannot supersede, change, alter, or amend either this constitutional amendment or this statutory provision, both of which require proportional proration among all recipients of state funds in said appropriations bill.
“Although well intended, in the unfortunate event that proration becomes necessary, the Legislature cannot provide, either constitutionally or legally, special protection for any individual agencies or departments of state government.
“For these reasons I have found it necessary to line item veto said bill. I most sincerely encourage you to agree with my disapproval of said item, or items. Done this 19th day of May, 2008.”
Section 126, Ala. Const.1901, does provide that the legislature may “repass” the vetoed item; however, Governor Riley’s message was delivered to the legislature on the last day of the 2008 Regular Session of the Alabama Legislature. In an affidavit filed with the trial court, Greg Pappas, the clerk of the Alabama House of Representatives, testified that at 11:54 p.m. on *805 May 19, 2008, as a motion for adjournment sine die was being made, he was given Governor Riley’s message vetoing § 4 of H.B. 328. The motion to adjourn was passed at 11:55 p.m. Thus, the legislature had no opportunity to address Governor Riley’s action while it was in session.
On July 21, 2008, the legislators sued the Riley defendants in the Montgomery Circuit Court seeking declaratory and in-junctive relief. The complaint alleged, among other things:
“The entire section vetoed by the Governor does not constitute an ‘item or items of any appropriation bill embracing distinct items’ as required by Art. V, § 126, of the Constitution.
“The Governor does not have the power under § 126 or otherwise under the laws of Alabama to reduce or increase particular items in the Bill, remove substantive legislative policy or conditions from the Bill, or add to the Bill.
“Governor Riley’s message, in which he conveyed his attempted item veto of Section 4 of HB 828 to the Alabama House of Representatives, failed to set out ‘in full’ the portion of HB 328 which he attempted to veto, contrary to the express provisions of § 126.
“The Governor otherwise violated §§ 42, 43, and 126 of the Constitution, as well as other applicable provisions of law.
“Plaintiffs contend the action of the Governor, allegedly taken pursuant to § 126, to veto Section 4 of HB 328 in its entirety, is unconstitutional, null, void, and of no force or effect, and that Section 4 is therefore due to be restored to the Act.
“An actual, justiciable controversy exists between the parties by virtue of the action of the Governor allegedly made pursuant to § 126, in vetoing Section 4 of HB 328 in its entirety.
“A declaratory judgment and other equitable relief are appropriate under the circumstances to declare the respective rights, liabilities, and obligations of the parties and to protect Plaintiffs’ interests.”
Based on these allegations, the complaint sought the following relief:
“A. That [the Riley defendants] be made parties to this action by appropriate legal process and be required to answer or otherwise respond hereto in the manner prescribed by the Alabama Rules of Civil Procedure.
“B. That the court will require a copy of this complaint to be personally served upon the Honorable Troy King, Attorney General of the State of Alabama, pursuant to § 6-6-227.
“C. That this court will set this matter for an early hearing on [the legislators’] request for Declaratory and Preliminary and Permanent Injunctive Relief.
“D. That, upon such hearing, the court will enter a declaratory judgment or decree determining and directing the rights of the parties hereto with respect to the matters set forth in this complaint, and that in said judgment or decree this court will declare that the attempted veto of Section 4 of HB 328 is unconstitutional, and otherwise null, void, and of no force or effect, and will declare that the appropriation of funds made by the legislature pursuant to HB 328 is lawful and of full effect, including Section 4, which was struck by the Governor in his unlawful and unconstitutional attempt to exercise a veto pursuant to § 126 of the Alabama Constitution of 1901.
“E. That, upon a hearing of this cause, [the Riley defendants] and those acting in concert with them be prelimi *806 narily and permanently enjoined and restrained from acting inconsistently with HB 328 as it was enacted by the legislature.”
On August 25, the Riley defendants moved to dismiss the complaint on grounds that the legislators lacked standing, that the case was not ripe for review, that the case was not justiciable, and that the legislators had failed to state a claim upon which relief could be granted. On September 2, 2008, the legislators moved for a summary judgment. The trial court denied the Riley defendants’ motion to dismiss and set a hearing for the legislators’ summary-judgment motion on September 24, 2008. The Riley defendants moved, pursuant to Rule 5, Ala. RApp. P., for a certification to perfect a permissive appeal to this Court and, alternatively, moved for a stay of the hearing on the legislators’ summary-judgment motion pending review of a petition to this Court for a writ of mandamus. The trial court denied both motions on September 19, 2008, and the Riley defendants filed this petition for the writ of mandamus. This Court stayed all proceedings in the trial court pending disposition of the Riley defendants’ petition.
Our standard for the appellate review of a petition for a writ of mandamus is well settled:
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991). It is well settled that ‘a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.’ Ex parte Central Bank of the South, 675 So.2d 403, 406 (Ala.1996).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998). The sole issue before this Court is whether, under the circumstances alleged in this petition, the underlying case is ripe for review. The Riley defendants asserted that because the underlying controversy is not ripe for judicial review, they have a clear legal right to a writ of mandamus from this Court directing the trial court to dismiss the underlying case.
In a legal context,
“ ‘[r]ipeness is defined as “[t]he circumstance existing when a case has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made.” ’ Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 352 n. 5 (Ala.2008) (quoting Black’s Law Dictionary 1353 (8th ed. 2004)).”
Martin v. Battistella, 9 So.3d 1235, 1240-41 (Ala.2008). Courts generally restrain themselves from addressing cases that have not reached the point of ripeness. The United States Supreme Court has stated that the basic rationale of the ripeness doctrine is “to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements .... ” Abbott Labs, v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). See also National Park Hospitality Ass’n v. Department of the Interior, 538 U.S. 803, 807, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). Alabama cases often address ripeness in the context of whether a case is justiciable, or appropriate for judicial review. That is, *807 the case must concern a dispute that is “ ‘ “a real and substantial controversy admitting of specific relief through a [judgment].” ’ ” Ex parte Bridges, 925 So.2d 189, 193 (Ala.2005) (holding that declaratory relief is not available for an “anticipated controversy” (quoting Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), quoting in turn Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969))).
In order to properly assess whether this case is ripe for review, this Court must begin with two assumptions. First, we assume that the legislative enactment of § 4 of H.B. 328 is valid, and second, we assume that Governor Riley’s veto of § 4 is invalid. In the context of a determination of ripeness, and only in that context, we must determine whether, assuming that the allegations in the legislators’ complaint are true, an actual, as opposed to an “anticipated,” dispute has arisen such that the trial court can meaningfully adjudicate claims concerning the legislators’ alleged claims of injury. Bridges and Baldwin County, supra. The Riley defendants assert that this case is not ripe for review because, they argue, the conditions imposed by § 4 of H.B. 328 are triggered only if general-fund revenues are insufficient to fully fund the conditional appropriations. The Riley defendants assert that Governor Riley’s veto has not created an actual controversy that is ripe for adjudication because, they say, nothing will occur until the State allocates funds to sources that would not have otherwise received such funds had § 4 survived. Because, the Riley defendants contend, § 4 has effect only if “funds are not available to fully fund the conditional appropriations from the State General Fund” and that determination has not been made, there is no actual dispute, and the legislators’ complaint is thus not ripe for review.
Although the legislators have advanced a number of arguments as to why their case is ripe for review, we focus on their assertion that a dispute presently exists because budgetary planning for State agencies for fiscal year 2009 has already begun, and State agencies have already calculated budgets based on the amount of allocations they are to receive pursuant to the redacted version of H.B. 328, i.e., the version without § 4. The legislators note that because an agency’s allocations are made on the basis of that agency’s absolute appropriation, those agencies that were not “protected” from proration under § 4 have already calculated budgets based on the receipt of funds that exceeds what they would receive if Governor Riley’s veto is determined to be unconstitutional. The legislators presented this argument to the trial court and supported it with the affidavit of Joyce Bigbee, the director of the Legislative Fiscal Office of the Alabama Legislature. Bigbee, stated, in pertinent part:
“The fiscal year 2009 budget process is underway. State agencies were required to submit an operations plan to the Department of Finance by August 1, 2008 detailing the proposed expenditure of funds for the fiscal year. The effect of the Governor’s line-item veto of Section 4 of House Bill 328 is to increase absolute General Fund appropriations by a total of approximately $180 million. Agencies were instructed by the Department of Finance to include this additional $180 million in the operations plans they have submitted. Expenditure of [fiscal year] 2009 appropriations by state agencies will begin October 1, 2008. Indeed, a percentage of the entire (now absolute) appropriation will be allotted to the agencies on October 1, 2008, and for most of the agencies, the allotment will be at least 25% of the total appropriation. For all of the agencies, the *808 allotment will be more than it would have been without the Governor’s veto.”
Also before the trial court was the affidavit of William D. Newton, assistant finance director for the State of Alabama. He stated, in pertinent part:
“After the Legislature adjourned in May 2008, state agencies were instructed to include in their operating budgets the appropriations purportedly made conditional by Section 4. These agencies and departments relied on Governor Riley’s veto of Section 4 in planning their expenditures for Fiscal Year 2009.”
The legislators note examples of agency operational funding showing that if an agency conducts its operations based on a larger budget than will actually be available in the event that Governor Riley’s veto is found unconstitutional, the effect of the revival of § 4 later in the fiscal year would have a significant impact on the agency’s ability to operate. This evidence supports the conclusion that, if the legislators’ claims are correct, State agencies are presently spending funds for operations that are not properly available for expenditure. The present expenditure of agency operational funds means that those agencies will not have those funds available for operations later in the year. In most instances this will result in a significant impairment of an affected agency’s ability to provide citizens those services the agency is obligated to supply. In some instances, this present inability to accurately determine operational budgets will result in the cessation of important services later in the fiscal year. We conclude that the legislators provided evidence to the trial court that Governor Riley’s veto created an actionable dispute, i.e., evidence indicating that Governor Riley’s action required the legislature to fund State agencies as though the appropriations affected by his veto were valid, even though the legislators contend that H.B. 328 was unconstitutionally limited by Governor Riley’s veto.
For the purpose of assessing whether this case is ripe for review, the legislators have shown that the Governor Riley’s veto of § 4 required State agencies to calculate their operating budgets based on inaccurate funding information, information that requires agencies to allocate for their operations money that will not be available. Moreover, State agencies are presently allocating and spending operating expenses according to that inaccurate information. This is not merely an “anticipated controversy.” Bridges and Baldwin County, supra. In the context of a ripeness determination, Governor Riley’s veto of § 4 immediately raises a dispute as to whether those State agencies that are not protected under § 4 are presently operating on budgets that, if Governor Riley’s veto is held to be invalid, will exhaust their available funds before the end of the fiscal year. Accordingly, we hold that the trial court correctly denied the Riley defendants’ motion to dismiss the legislators’ complaint. Because the Riley defendants have no clear legal right to such relief, the Riley defendants’ petition for a writ of mandamus is due to be denied.
PETITION DENIED.
LYONS, WOODALL, SMITH, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., concurs specially.
SEE, STUART, and BOLIN, JJ., concur in the result.

. The disparity in the October 30, 2008, date in a preceding sentence and the October 15, 2008, date as the date that Governor Riley certifies the amount of funds available for conditional appropriations is not explained.

. Section 126 provides:
*804 'The governor shall have power to approve or disapprove any item or items of any appropriation bill embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items disapproved shall be void, unless re-passed according to the rule and limitations prescribed for the passage of bills over the executive veto; and he shall in writing state specifically the item or items he disapproves, setting the same out in full in his message, but in such case the enrolled bill shall not be returned with the governor's objection.”