PARKER, Justice.
Peacock Timber Transport, Inc. (“Peacock”), appeals the summary judgment entered by the Montgomery Circuit Court (“the circuit court”) in favor of B.P. Holdings, LLC, William Blount, Derek Parrish, Diamond Homes, LLC, and Sunbelt Environmental, LLC (hereinafter collectively referred to as “the defendants”). We reverse the circuit court’s judgment and remand the case.

Facts and Procedural History

Blount and Parrish are partners in Blount Parrish & Company (“BPC”), an investment firm that specializes in public *915 financing. Parrish’s affidavit testimony indicates that in 1998 Blount formed B.P. Holdings “for the purpose of accepting equity positions in companies which [BPC] represented in financial transactions, primarily bond issuances.” At all times pertinent to this appeal, Blount owned 48% and Parrish owned 30% of B.P. Holdings; the remaining 22% was owned by various employees of BPC. Parrish’s affidavit testimony indicates that Blount was the “managing member” of B.P. Holdings and that in that capacity Blount “was specifically named as custodian of the books and records of the company; assumed sole responsibility for the preparation, and filing of state and federal tax returns; and directly and exclusively managed the business activities of the company in every other manner.”
Parrish’s affidavit testimony indicates that in 2001 Blount formed Diamond Homes to take over unfulfilled contracts that had been entered into by a now bankrupt company, Dencraft Furniture Company; Blount and Parrish owned Diamond Homes in equal portions. In relation to a bond issue closed by BPC, B.P. Holdings had acquired an interest in Dencraft before its bankruptcy. In their efforts to make Diamond Homes succeed, Blount and Parrish had personally guaranteed substantial debt taken on by Dencraft and by Diamond Homes; Diamond Homes eventually “closed down with very few assets, mostly unused raw materials, and several hundred thousand in debt, some of which was guaranteed by [Blount] and/or [Parrish].”
On May 31, 2003, Peacock obtained a judgment in the Pike Circuit Court against B.P. Holdings in the amount of $251,834.37 (“the 2003 judgment”). Peacock had sued B.P. Holdings and Blount, among others, alleging fraud, deceit, theft of property and services, fraudulent suppression, and unjust enrichment based on facts not pertinent to this appeal (“Peacock’s 2003 action”).[1] Although Blount was a defendant in Peacock’s 2003 action and although judgment in that action was entered against B.P. Holdings, the 2003 judgment states that “[s]aid verdict was also returned in favor of ... Blount.” Parrish was not a party to Peacock’s 2003 action.
On July 28, 2003, $1,120,000 was deposited in B.P. Holdings’ account as compensation for work BPC and others had performed on behalf of Jefferson County in closing a bond issue — at that time, B.P. Holdings had not yet satisfied the 2003 judgment. The amount of the fee earned by BPC for the Jefferson County transaction was $500,000[2] and approximately $600,000 of the $1,120,000 was used to pay other consultants; B.P. Holdings did not earn any portion of the $1,120,000 but, according to Parrish’s affidavit testimony, was used as a conduit to receive the money and to transfer the money to the appropriate parties. Parrish’s affidavit testimony indicates that on July 31, 2003, Blount transferred $500,000 from B.P. Holdings to Diamond Homes (this transfer is the basis of this appeal and will hereinafter be referred to as “the transfer”). On the same day, Diamond Homes executed a promissory note, signed by Blount, for $500,000 in favor of B.P. Holdings. Also on the same day, Diamond Homes issued checks, *916 signed by Blount and Parrish, in the amount of $250,000 to both Colonial Bank and Aliant Bank, creditor banks of Diamond Homes (“Diamond Homes’ creditor banks”). The checks to Diamond Homes’ creditor banks were to satisfy some of Diamond Homes’ debt that had been personally guaranteed by Blount and Parrish.
Blount’s deposition testimony indicates that he was aware of the 2003 judgment at the time of the transfer but that he “believe[d] [that] the judgment [had been] appealed. So [he] [did not] know if that judgment was a live judgment or not.” Parrish’s affidavit testimony indicates that he “had absolutely no knowledge of any judgment then outstanding against B.P. Holdings by Peacock” at the time of the transfer.
On February 25, 2005, Peacock sued B.P. Holdings, Blount, and Parrish seeking to have the transfer set aside as fraudulent pursuant to the Alabama Fraudulent Transfer Act, § 8-9A-1 et seq., Ala.Code 1975 (“the AFTA”), and seeking to pierce the corporate veil of B.P. Holdings. B.P. Holdings, Blount, and Parrish filed an answer on April 21, 2006. On July 3, 2006, Peacock amended its complaint to include Diamond Homes and Sunbelt Environmental [3] as defendants. The defendants filed a response to Peacock’s amended complaint on July 19, 2006.
On November 21, 2007, Peacock filed a motion for a summary judgment. On February 29, 2008, the defendants filed a response to Peacock’s summary-judgment motion. Following a hearing at which the circuit court heard oral arguments on Peacock’s summary-judgment motion, the circuit court denied Peacock’s summary-judgment motion on March 4, 2010.
On October 5, 2011, Parrish filed a motion to dismiss the claims asserted against him. On the same day, Parrish also filed a motion for a summary judgment. In his summary-judgment motion, Parrish argued that Peacock’s claims alleging a violation of the AFTA “should be dismissed as to Parrish” because the AFTA did not provide a remedy against Parrish personally in that he was not a debtor of Peacock. Parrish also argued in his summary-judgment motion that Peacock’s claim seeking to pierce the corporate veil of B.P. Holdings, thereby holding Parrish personally liable for the 2003 judgment, “should ... be dismissed as to Parrish” because “the uncontroverted evidence in this proceeding overwhelmingly establishes that Parrish never managed or controlled B.P. Holdings or any other company named in this action, and was never in a position to do so.” On October 10, 2011, Blount also filed a motion for a summary judgment; Blount argued that Peacock’s claims against him were barred by the doctrines of res judica-ta and collateral estoppel. Blount also argued that Peacock’s fraudulent-transfer claim had been extinguished by § 8-9A-9(5), Ala.Code 1975.[4] Neither Blount nor Parrish argued in their respective motions that Peacock failed to present substantial evidence to support its claim that the transfer was due to be set aside as fraudulent under the AFTA. We note that neither B.P. Holdings nor Diamond Homes filed a motion for a summary judgment.
*917 On October 15, 2011, Peacock filed a response to Blount’s and Parrish’s summary-judgment motions, arguing that its request that B.P. Holdings’ corporate veil be pierced was not a cause of action but a request for an equitable remedy; that the doctrines of res judicata and collateral es-toppel did not bar its claims against Blount; and that its AFTA claims had not been extinguished by § 8-9A-9(5). Concerning the statute-of-limitations issue, Peacock argued that it brought its AFTA action pursuant to § 8-9A-4, Ala. Code 1975, not § 8-9A-5(b), as Blount alleged. Therefore, Peacock argued in its response to Blount’s summary-judgment motion, under § 8-9A-9(2), Ala.Code 1975, Peacock’s action had not been extinguished because Peacock brought its AFTA claim “within six years after the transfer of personal property was made.”
On October 24, 2011, the circuit court held a hearing on the pending summary-judgment motions. After hearing arguments from Peacock, Blount, and Parrish, the circuit court orally granted Blount’s and Parrish’s summary-judgment motions, as follows:
“And my position simply is this: That this money was not an asset of B.P. [Holdings]. There’s no way you can make this money an asset of B.P. [Holdings].
“What happened is that, in the Pike County case, B.P. [Holdings], Blount, and maybe some others were sued. But as it was brought to my attention throughout this litigation, the judgment was against B.P. [Holdings]. Well and in favor of Blount.
‘Well, as you continue to get money in for fees you have earned and if the IRS says this was Blount and Parrish’s personal money and they had to pay taxes on it, then indeed it was not B.P. [Holdings’].
“But B.P. [Holdings] had not had any — there was no relationship where B.P. [Holdings] had earned any money that was coming into B.P. [Holdings] as I understand the assets. And I looked at it more favorably to [Peacock] because I would like for [Peacock’s trial counsel] to go forward.
“But I just can’t find where this is an asset of B.P. [Holdings]. I’m going to treat these arguments as summary judgment. And I enter summary judgment in favor of Blount and Parrish.... ”
On November 3, 2011, the circuit court entered an amended final order “entering summary judgment in favor of all defendants.”
Peacock filed its notice of appeal on December 2, 2011, naming B.P. Holdings, Blount, and Parrish as appellees; B.P. Holdings has not filed a brief on appeal.

Standard of Review

“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion....’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the *918 nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

Discussion

As set forth above, the circuit court granted Blount’s and Parrish’s summary-judgment motions based on its conclusion that the AFTA did not apply to the transfer because the $500,000 transferred from B.P. Holdings to Diamond Homes was not the property of B.P. Holdings. Peacock argues on appeal that there is a genuine issue of material fact as to whether the $500,000 transferred from B.P. Holdings to Diamond Homes was the property of B.P. Holdings.
In Thompson Properties v. Birmingham Hide & Tallow Co., 839 So.2d 629, 632 (Ala.2002), we set forth the following concerning the AFTA:
“The [AFTA] ... provides that certain transfers ‘made by a debtor’ may be found void or voidable as to creditors. The purpose of the [AFTA] is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach. Under § 8-9A-4(a), Ala.Code 1975, ‘[a] transfer made by a debtor is fraudulent as to a creditor ... if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.’ ‘Transfer’ is defined at § 8-9A-l(13), Ala.Code 1975, as ‘[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payments of money, release, lease, and creation of a lien or other encumbrance.’ ‘Debtor’ is defined at § 8-9A-l(6) as ‘[a] person who is liable on a claim.’ ‘Creditor’ is defined at § 8-9A-l(4) as ‘[a] person who has a claim.’ ‘Claim’ is defined at § 8-9A-1(3) as ‘[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and specifically shall include the nonpayment of child support pursuant to a court order.’ ”
Blount and Parrish argue that the $500,000 transferred from B.P. Holdings to Diamond Homes could not have been the property of B.P. Holdings because B.P. Holdings did not earn the money. Blount and Parrish argue that they earned the $500,000 transferred from B.P. Holdings to Diamond Homes through services provided to Jefferson County by BPC and that Blount and Parrish simply used B.P. Holdings as a conduit through which to direct Blount’s and Parrish’s money. Blount and Parrish essentially argue that because Peacock has presented no substantial evidence indicating that B.P. Holdings earned the $500,000 transferred from B.P. Holdings to Diamond Homes, the $500,000 could not have been the property of B.P. Holdings; thus, Blount and Parrish argue, the AFTA did not apply.
Peacock argues that whether B.P. Holdings earned the $500,000 transferred from *919 B.P. Holdings to Diamond Homes is irrelevant. Peacock argues that the issue is whether the $500,000 transferred from B.P. Holdings to Diamond Homes was the “property” of B.P. Holdings, as the term “property” is defined in the AFTA. Peacock argues that the promissory note executed by Diamond Homes in favor of B.P. Holdings on the day of the transfer in the amount of $500,000 is substantial evidence that the $500,000 transferred from B.P. Holdings to Diamond Homes was the property of B.P. Holdings.
The AFTA defines property as “[b]oth real and personal property, whether tangible or intangible, and any interest in property whether legal or equitable and includes anything that may be the subject of ownership.” § 8-9A-l(ll), Ala.Code 1975. See American National Red Cross v. ASD Specialty Healthcare, Inc., 888 So.2d 464, 465 (Ala.2003) (“If not apparent from the language of the statute itself, the Alabama Comment to § 8-9A-1 of the [AFTA] notes the expansive definition of ‘property,’ which it says was specifically designed ‘to give the term “property” a broad meaning.....’”). Based on the promissory note, we conclude that there is a genuine issue of material fact as to whether the $500,000 transferred from B.P. Holdings to Diamond Homes was the property of B.P. Holdings. As evidenced by the promissory note, B.P. Holdings certainly has an interest in the $500,000. If B.P. Holdings truly held no interest in the $500,000 transferred from it to Diamond Homes, Diamond Homes would not have executed the promissory note in favor of B.P. Holdings. Blount even notes in his appellate brief that “[w]e will concede that on its face it might appear that the funds at issue here were assets of B.P. Holdings.” Blount’s brief, at p. 9. In Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986), we held that “[s]ummary judgment for a defendant is proper when there is no genuine issue of a material fact as to any element of a cause of action.... ” Peacock presented substantial evidence that the $500,000 transferred from B.P. Holdings to Diamond Homes was the property of B.P. Holdings, thereby creating a genuine issue of material fact as to that issue. Accordingly, we reverse the summary judgment.
Blount makes the alternative argument that, even if the AFTA applies, we must enter a judgment in favor of Blount, Parrish, and B.P. Holdings because, he argues, Peacock did not oppose on appeal the statute-of-limitations argument Blount raised below. Blount does not cite the applicable statute of limitations on appeal or make any argument concerning the actual merits of the argument; he argues only that, because Peacock did not address the argument, the defendants are now entitled to a judgment on that unopposed ground.
Below, Blount argued that the applicable statute of limitations barred Peacock’s AFTA claim. Section 8-9A-9, Ala.Code 1975, is the Code section setting forth the applicable statute of limitations governing claims brought under the AFTA. Section 8-9A-9 provides:
“A claim for relief with respect to a fraudulent transfer under this chapter is extinguished unless action is brought:
“(1) Under Section 8-9A-4(a) within 10 years after the transfer of real property was made.
“(2) Under Section 8-9A-4(a) within six years after the transfer of personal property was made.
“(3) Under Section 8-9A-4(e) or 8-9A-5(a), within four years after the transfer was made when the action is brought by a creditor whose claim arose before the transfer was made.
“(4) Under Section 8-9A-4(c), within one year after the transfer was *920 made when the action is brought by a creditor whose claim arose after the transfer was made; or
“(5) Under Section 8-9A-5(b), within one year after the transfer was made.”
In his statute-of-limitations argument raised below, Blount argued that, before Peacock filed its AFTA claim, the claim had been extinguished by § 8-9A-9(5), which requires that an AFTA claim brought pursuant to § 8-9A-5(b) be brought “within one year after the transfer was made.” Peacock argued below that it had not brought its AFTA claim pursuant to § 8-9A-5(b) but pursuant to § 8-9A-4. Section 8-9A-9(2) requires that an AFTA claim brought pursuant to § 8-9A-4(a) be brought “within six years after the transfer of personal property was made”; § 8-9A-9(3) requires that an AFTA claim brought pursuant to § 8-9A-4(c) be brought “within four years after the transfer was made when the action is brought by a creditor whose claim arose before the transfer was made.” Blount has not offered anything on appeal to indicate that Peacock brought its AFTA claim pursuant to § 8-9A-5(b) rather than § 8-9A-4.
Section 8-9A-4 provides:
“(a) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.
“(b) In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:
“(1) The transfer was to an insider;
“(2) The debtor retained possession or control of the property transferred after the transfer;
“(3) The transfer was disclosed or concealed;
“(4) Before the transfer was made the debtor had been sued or threatened with suit;
“(5) The transfer was of substantially all the debtor’s assets;
“(6) The debtor absconded;
“(7) The debtor removed or concealed assets;
“(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;
“(9) The debtor was insolvent or became insolvent shortly after the transfer was made;
“(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
“(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
“(c) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:
“(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
“(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.”
Section 8-9A-5(b) provides:
“A transfer made by a debtor is fraudulent as to a creditor whose claim arose *921 before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.”
In its complaint, Peacock did not specify which Code section it was asserting its AFTA claim under. However, in filings subsequent to its complaint, which include Peacock’s summary-judgment motion and its response to Blount’s summary-judgment motion, Peacock has consistently maintained that it asserted its AFTA claim against the defendants pursuant to § 8-9A-4, not § 8-9A-5(b). Further, in order for § 8-9A-5(b) to apply, B.P. Holdings would have had to have made the transfer to satisfy an antecedent debt owed to Diamond Homes. Blount has not offered any evidence indicating that the transfer was made to satisfy an antecedent debt B.P. Holdings owed to Diamond Homes; in fact, there is nothing to indicate that B.P. Holdings has ever been a debtor of Diamond Homes. Further, the promissory note indicates that Diamond Homes is a debtor of B.P. Holdings, thereby disproving Blount’s argument that B.P. Holdings is a debtor to Diamond Homes. For all of these reasons, § 8-9A-5(b) does not apply. Therefore, we reject the premise of Blount’s statute-of-limitations argument raised below that Peacock’s AFTA claim was brought pursuant to § 8-9A-5. Our determination that Peacock’s claim is based on § 8-9A-4, not § 8-9A-5, is dis-positive of the statute-of-limitations issue.
We note that Blount and Parrish make several arguments on appeal related to their personal liability. For instance, Parrish argues that “the undisputed evidence shows [that] ... Parrish had no actual intent to defraud an unknown creditor, Peacock.” Parrish’s brief, at p. 19. However, whether Parrish personally intended to defraud Peacock is not determinative. B.P. Holdings is the debtor in this case, not Parrish individually, and the circuit court must determine if B.P. Holdings intended to defraud Peacock in making the transfer. Although Parrish owns B.P. Holdings jointly with Blount and Parrish’s actions as an owner of B.P. Holdings may be relevant to determining that issue, the circuit court will have to look to the entirety of the evidence concerning B.P. Holdings’ allegedly fraudulent intentions concerning the transfer, not just Blount’s or Parrish’s individual intentions.
We also note that Blount argues that Peacock’s claims against him are barred by the doctrines of res judicata and collateral estoppel. However, Peacock’s AFTA action is based on an entirely different set of facts and cause of action than the facts and causes of action that led to Peacock’s obtaining the 2003 judgment. Therefore, Blount’s arguments based on the doctrines of res judicata and collateral estoppel are entirely without merit.

Conclusion

Based on the foregoing, we reverse the summary judgment in favor of the defendants, and we remand the cause for the circuit court to determine whether Peacock is entitled to avoid the transfer under the AFTA and whether the corporate veil of B.P. Holdings should be pierced, thereby holding Blount and Parrish personally liable for the transfer.
REVERSED AND REMANDED.
MALONE, C.J., and BOLIN, SHAW, and WISE, JJ., concur.

. Peacock transported chicken feed for Alabama Protein Recycling, LLC ("APR”), an entity formed by B.P. Holdings and Jim Mul-lís in 1998. Peacock’s claims arose out of APR’s failure to pay Peacock for services Peacock had performed for APR.

. Blount’s deposition testimony indicates that he did not initially include the $500,000 as personal income on his 2003 personal-income tax return but that he later amended his tax return to “show it was income to [Parrish] and I.”

. Peacock alleged below that a transfer of money from B.P. Holdings to Sunbelt Environmental was also fraudulent; however, Peacock makes no argument concerning that transaction on appeal.

. Section 8-9A-9(5) provides, in pertinent part:
"A claim for relief with respect to a fraudulent- transfer under this chapter is extinguished unless action is brought:
"(5) Under Section 8-9A-5(b), [Ala. Code 1975,] within one year after the transfer was made.”